WILLIAM H. CHERRY ET AL. v. THE BOARD OF COMMIS-- SIONERS OF THE TOWN OF KEYPORT.

1. If a municipal corporation is invested with full power to lay out and open streets, its authority is exclusive, and no other tribunal can assume jurisdiction within the corporate limits.
2. The legislature having directed, by an act passed March 1st, 1850, that compensation shall be made to landowners for lands taken for public highways. it is not now, by reason of the provision in the constitution of 1844, competent for the legislature to pass an act authorizing lands to be taken for highways without compensation.
3. The supplement of 1871 to the charter of Keyport (*Pamph. L., p.* 382, § 2) makes it the duty of the board of commissioners when they lay out a new street, to order that it be opened within a reasonable time, and an assessment made to the landowners for lands taken for the street.
4. The mode of assessment prescribed in section 2 of said supplement is not a constitutional mode of making the assessment, but the act of March 12th, 1878, with its supplement of March 12th, 1880, cures the defect, and it is the duty of the town commissioners to apply for an assessment to be made in accordance with those acts.
5. The authorities of Keyport have exclusive jurisdiction over the subject of laying out streets or highways within the town limits.

On error to Supreme Court.

For the plaintiffs in error, *B. B. Ogden.*

For the defendants in error, *Frank P. McDermott.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The controversy in this case relates to the power of the Court of Common Pleas of Monmouth county to proceed, under the General Road law, to lay out a public road in the town of Keyport. The authorities of Keyport claim exclusive jurisdiction over this subject. It is conceded that if such power is conferred by special statute upon Keyport, the right to proceed under the general law is excluded. *State* v. *Clarke,* 1 *Dutcher* 54; *Bodine* v. *Trenton,* 7 *Vroom* 198.

In the absence of statutory provision which, by expression or necessary implication, gives complete jurisdiction of the subject matter of laying out roads to the corporation within its territorial limits, the general power of the court under the Road law remains. *State* v. *Troth,* 5 *Vroom* 377 ; *State* v. *Fisher,* 14 *Id.* 377.

The provisions in the town charter touching this subject are as follows :

Section 5 gives the commissioners, who are the governing body, the power, among other things, to pass and enact by-laws and ordinances for opening, altering, regulating and fixing the grade of the roads, streets and sidewalks, for keeping the same in repair and for preventing and removing obstructions therefrom, &c.

Section 14 reads as follows :

" That whenever the landowners on any street that is or may hereafter be opened, or on any parts of the streets within the limits described in the first section of this act, shall determine, by a majority of votes of the landowners in said streets (each landowner to be entitled to one vote for every forty feet of land owned by him or her on such street, and each landowner to be entitled to one vote at least), to grade and pave the sidewalks on one or both sides of such street, any landowner on such street or part of street may call a meeting of landowners, by giving a written notice, put up in three public places in said town five days previous to said meeting, and designating the time and place of such meeting ; and the said landowners, when assembled, shall choose a chairman and secretary, who shall determine the number of votes to which each landowner is entitled, receive orally and count the votes, and their certificate of determination shall be evidence thereof; and such certificate of their determination shall be filed with the board of commissioners, and when so filed the said street or parts of a street shall be subject to the provisions of this act, and said board of commissioners shall proceed to have the sidewalks of such street or parts of a

street graded and paved in the manner herein prescribed." See *Pamph. L.* 1870, *p.* 1028.

In 1871 the following supplement was passed:

" The said board of commissioners shall also have full power to open streets, widen streets and parts of streets, straighten lines of streets, and assess the cost, benefits and damages thereof on the property benefited.; they are also empowered to receive proposals, award contracts for and order the laying of such drains, sewers and culverts as they shall deem necessary, and on the application of property holders, in the manner provided in the fourteenth section of the act to which this is a supplement, in applications for paving streets, shall lay out new streets." See *Pamph. L.* 1871, *p.* 382, § 2.

The question lying at the foundation of this controversy is, whether the legislature, in the supplement of 1871, has manifested an intention and purpose to provide compensation to landowners whose lands are taken for the laying out of new streets.

Prior to the adoption of the constitution of 1844, lands were taken for public highways by legislative authority without compensation. This power was upheld under the right of eminent domain because an allowance was made in grants of the proprietors of East and West Jersey for public highways. The old road laws, which failed to provide compensation, were held to be constitutional. *State* v. *Potts*, 1 *South.* 348.

The injustice of such deprivation of property was apparent, when lands became densely populated and were conveyed by strict measure.

In the constitution of 1844 this subject was left under legislative control, but provision was made "that private property shall not be taken for public use without just compensation; but land may be taken for public highways as heretofore, until the legislature shall direct compensation to be made."

In the act of March 1st, 1850, surveyors of the highways, in laying out roads, were required to give damages to the owner of lands taken.

In *The State* v. *Seymour*, 6 *Vroom* 47, Mr. Justice Scudder, in delivering the opinion of the court, said: " That after the legislature has thus, in exercising the discretion committed to it by the constitution, changed the policy of our law in a manner so accordant with the principles of natural law and exact justice, I should be unwilling to hold that it could take a step backward, and thereby re-impose this onerous servitude upon private property."

If the constitution had provided that the legislature shall have power to give compensation for lands taken for highways, the subject would have been within the control of the lawmaker to grant or withhold it from time to time, according to legislative discretion. But such is not the language used; by the express terms of the constitution of 1844, the right to take without compensation was to continue only until the legislature should direct compensation to be made. When the legislature exercised this power under the constitution, its authority was spent, its control over the subject ceased, and in my judgment the constitutional protection became irrevocable.

If this is a correct interpretation of the fundamental law, no power has been bestowed upon the town of Keyport to lay out streets, unless the supplement of 1871 makes it necessary, when new streets are laid out, to assess damages to landowners for lands taken therefor. The adopted rule of construction requires that we shall incline to such a reading of this supplement as will lead to the conclusion, that the legislature has observed the mandate of the constitution in this respect in passing it. The power to lay out new streets being separated from the power to open streets, and to do the other acts to which the duty of making an assessment is attached, it might be held to indicate an intention that no assessment shall be made in laying out new streets; but such is not the necessary construction.

The act may, we think, reasonably be held to read, that the board of commissioners shall have power, on the application of property owners, to lay out new streets, and that they

shall also have full power, that is, without such application, to open streets, widen streets and parts of streets, straighten lines of streets, and to assess the cost on the property bene-fited, thus extending the duty to assess to the entire scope of the power to act.

But waiving that view, the power to assess for opening roads is not limited to roads existing when the supplement was passed; it extends to the opening of any road subsequently dedicated or laid out. Then we think that under the language of this supplement we must ascribe to the legislature the intention to impose upon the commissioners of Keyport, when they lay out a new street, the duty of declaring that it shall be opened within a reasonable time. Thus the power will, by force of this act, inhere in the commissioners, and the obligation will rest upon them to assess damages to land-owners, in compliance with the organic law.

It is true that if the power granted by this act is not sup-plemented by after legislation, the authority to lay out new streets will still be wanting, because this supplement requires the entire cost, benefit and damage to be laid upon the prop-erty benefited.

The act of March 23d, 1883 (*Rev. Sup., p.* 548, *pl.* 263), is relied upon to remedy the defect in the Keyport charter, but that act in terms applies only to assessments for street, sewer and drainage improvements.

By the improvement of streets is meant the grading and paving and any other work upon them for which an assess-ment may be levied. It does not comprehend the assessment of damages to landowners by the laying out of a new street.

The act of March 12th, 1878, and its supplement of March 12th, 1880 (*Rev. Sup., pp.* 548, 553, §§ 265, 280), are curative acts to which the commissioners may resort for the needed power.

The said acts provide, that whenever the laying out, open-ing or widening a street has been directed or authorized by any legislative act, and no adequate provision has been made for the costs, damages and expenses incurred or to be incurred

for such improvement, or for paying any indebtedness authorized to be incurred for such costs, damages or expenses, it shall be lawful for the board of commissioners within any township or village of this state, or other persons having charge of such work or improvement, to apply to the Circuit Court of the county wherein such improvement is situate to have any illegal assessment vacated, if any such there be, and for the appointment of commissioners to make an assessment or re-assessment in accordance with the constitutional mode prescribed in the said act of March 12th, 1878. These acts of March 12th, 1878, and March 12th, 1880, apply to the making of a re-assessment where the original assessment is illegal, and also to cases where no previous assessment has been made, when costs, damages and expenses of laying out, opening and widening roads are to be provided for. The supplement of 1871 to the Keyport charter imposes upon them the duty of assessing damages for lands taken for streets, and they may therefore avail themselves of the legislation of 1878 and 1880, before referred to, and apply to the Circuit Court of Monmouth county for the appointment of commissioners to make a valid assessment, whenever they order a new street to be laid out and opened.

Being thus invested with full power to lay out and open streets, their authority is exclusive, and no other tribunal can assume jurisdiction within the corporate limits.

The judgment of the Supreme Court is affirmed.

*For affirmance*—The Chancellor, Chief Justice, Depue, Dixon, Magie, Reed, Van Syckel, Clement, Cole, Smith, Whitaker. 11.

*For reversal*—None.